(22 App. Div. 389.)

WILLIAMSON v. SEELY.

(Supreme Court, Appellate Division, Second Department.   November 30, 1897.)

1. WRITTEN CONTRACTS—COMPLETENESS—PAROL EVIDENCE.
    Plaintiff had obtained from a town a contract to furnish electric lighting.
This he assigned to defendant by a written agreement under seal, which
was executed in the presence of defendant's attorney, and by one clause
of which plaintiff agreed to become manager for defendant, and run the
plant for a year without salary, and use his best endeavors to properly and
successfully perform the contract.   Part of the consideration was defend-
ant's note for $1,750.   Held, in an action on the note, that defendant could
not show an oral guaranty by plaintiff, prior to the execution of the writ-
ten agreement, that he would manage it so that the cost of running the
dynamo should be $250 per month, and that in fact it was $500 per month,
since the written agreement appeared, on inspection, to be complete.

2. SAME—VARIATION OF CONTRACT.
    The guaranty could not be shown for the further reason that it was in-
consistent with the written agreement.

3. CONVERSION—DEMAND—WHEN NECESSARY.
    Plaintiff, being lawfully in possession of a dynamo owned by defendant,
and being dispossessed, removed it to another place for safe-keeping, and
notified defendant by letter, and asked for, but never received, instructions.
Thereafter the dynamo was sold by the sheriff under an execution against
defendant.   Held, that a demand for the return of the property was essen-
tial to defendant's right to recover upon his counterclaim for conversion.

4. EVIDENCE—LETTERS—PRESUMPTIONS.
    Where one party to an action testifies without objection that he wrote
a certain letter to the other party, and the latter, though a witness, does not
deny its receipt, the testimony warrants a finding that the letter was mailed
and received.

Appeal from trial term.

Action by John N. Williamson against John A. Seely.   From a
judgment entered on a verdict in favor of plaintiff, and from an
order denying a new trial, defendant appeals.   Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT,
HATCH, and BRADLEY, JJ.

Edward S. Seidman, for appellant.
Joseph Fitch, for respondent.

GOODRICH, P. J.   The plaintiff had obtained from the town of
Hempstead a contract to furnish electric lighting in a part of the
town known as the "Rockaway Beach Lighting District."   In June,
1896, he entered into a written contract with the defendant, by
which he assigned this contract to the defendant for $1,500 in cash,
the defendant's note for $1,750, and certain orders upon the Hemp-
stead authorities.   The plaintiff agreed to become manager for the
defendant, and run the plant for a year without salary.   This action
is brought to recover the amount of the note.   The defendant, by
supplemental answer, set up two counterclaims:   First. That in
consideration of the written contract the plaintiff "promised this
defendant that the cost of running said dynamo so as to furnish the
light   *   *   *   would be $250 per month," and that he would man-
age it so that the cost should be that sum, but that the cost proved
to be $500 per month;   that the defendant bought materials and ap-

paratus for running the plant, which, through the plaintiff's breach of his contract, had become worthless. Second. That the plaintiff, in violation of his duties as manager, had taken away and converted certain other property of the defendant, of the value of $1,410.

Under the first counterclaim, the defendant offered evidence to show a collateral and oral contract not contained in the written agreement. It is well settled that in order to bring a case within the rule admitting parol evidence to complete an entire agreement, of which a writing is only a part, two things are essential: The writing must not appear, upon inspection, to be a complete contract; and the parol evidence must be consistent with, and not contradictory to, the written instrument. Thomas v. Scutt, 127 N. Y. 133, 27 N. E. 961. We have also the ordinary rule that where a contract is consummated by writing the presumption of law is that the written instrument contains the whole of it. Filkins v. Whyland, 24 N. Y. 338. To this must be added, in the present case, a further presumption, as to the intention of the parties. We have a written and formally drawn instrument, under seal, executed in the presence of Mr. Warner, the attorney for the defendant in this action. It may be assumed, I think, that the rights of the defendant were carefully guarded, with a zeal that is evidenced by his elaborate brief on this appeal. With these presumptions in mind, we arrive at the defendant's exception to the exclusion of evidence to show another and additional contract, by which the plaintiff guarantied that the plant would be run at an expense of $250 per month. There was no allegation of fraud in the transaction. The defendant testified that the contract upon which he relied, and the conversation by which he sought to prove it, occurred before the written agreement of June 20th. Yet there was in the contract the clause by which the plaintiff agreed to "superintend and manage the performance of the aforesaid contract for the term of one year from the date hereof, and for no other compensation (that is to say, the manufacture and furnishing of light in accordance with the terms of the aforesaid contract), and to use his best endeavors to properly and successfully perform the same." Here was an agreement on the identical subject of the additional contract which the defendant was attempting to prove. The only matter which the defendant claims was omitted was a guaranty of the expense of the plaintiff's administration of the plant. It can hardly be possible to draw a distinction which will remove this offer of evidence from the principles laid down in the case of Thomas v. Scutt, already cited. Indeed, it would seem to appear affirmatively, not only that the writing, upon inspection, does appear to be a complete contract, but also that the parol evidence offered would be inconsistent and contradictory thereof.

The second counterclaim was based on an allegation that the plaintiff had converted some of the defendant's property. It appears that the defendant was the owner of a boiler and engine which were in a building at Rockaway Beach, in which the receiver of another company was operating another plant. The receiver was a tenant of one Meyers, and the defendant was a subtenant of the

receiver, who was dispossessed by the landlord for nonpayment of rent. The defendant had purchased a dynamo and some other articles used in the operation of the plant, which he had set up on the premises; and after the receiver was dispossessed the plaintiff removed this property to his own premises, for its protection and care. Notice of this was sent to the defendant, and no demand by him for the return of the property was proved. The articles were sold by the sheriff under an execution against the defendant. Under such circumstances, a demand for the return of the property was an essential element of the defendant's right to recover. The true rule as to demand is stated in Castle v. Bank, 75 Hun, 89, 93, 26 N. Y. Supp. 1037:

"In view of the authorities, we must regard it as settled law that one who comes lawfully in possession of property is not liable for conversion until after demand and refusal. Gillett v. Roberts, 57 N. Y. 28; 2 Bouv. Inst. §§ 3530, 3531, 3532. In the last section (3532) it is said: 'When the conversion is direct, as by an illegal taking or a wrongful assumption of property, or a misuse of the chattel, we have seen the conversion is complete without a demand; but, to maintain trover for an indirect conversion, a demand is, in general, indispensable, because, the defendant being lawfully in possession of the goods, there is no conversion before he assumes a property in them.'"

So, in Scofield v. Whitelegge, 49 N. Y. 259, and in Treat v. Hathorn, 3 Hun, 646, it was held that where the plaintiff's case depended upon a wrongful detention, without a wrongful taking, a demand and refusal are necessary. In Boyce v. Brockway, 31 N. Y. 490, it was held that where the defendant, at Catskill, received property in good faith, and stored it in his warehouse, such act was not the exercise of such dominion over it as would amount to a conversion, without proof of a demand and refusal, but when he afterwards affirmatively treated the article as his own, and shipped it to New York for sale, he did assume dominion over it. In the case at bar there was ample evidence to show that the possession was not hostile to, but in protection of, the rights and property of the defendant, and a demand and refusal were requisite to enable the defendant to recover. There was no offer of any such evidence. On the contrary, the plaintiff wrote the defendant a letter, notifying him that he was about to be dispossessed, and, after the dispossession had taken place, another letter, notifying him of that fact, and asking what he should do. It is true that the plaintiff did not, in so many words, testify that the letter was actually mailed, but no objection was made on that account. The letter was demanded at the trial, but it was not produced. Nor did the defendant, though a witness, testify that he had not received it. In Steamship Co. v. Otis, 100 N. Y. 446, 3 N. E. 485, the court held similar testimony sufficient to warrant a finding that a letter had been mailed to and received by the person to whom it was sent.

We have carefully examined the other exceptions, but discover no error in the rulings of the learned justice at the trial term. The judgment must be affirmed. All concur.